A COMPLAINT UNDER THE CIVIL RIGHTS ACT,
42 U.S.C. § 1983

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

_Glenn Damond_
Plaintiff

_1200123529_
Inmate Number

_Jury Demand_

VERSUS

_City of Baton Rouge, Department of Public_
_Safety & Corrections; Correcthealth; Sid J._
_Gautreaux III; Dennis Grimes; cheri leaders;_
_Janice Martin; Darryl anderson; Thomas Eshola;_
(Enter above the full name of each _Edward Peterson; will Mitchell._
defendant in this action.)

Electronic Filing Pilot Program
In accordance with the Procedural Rules for Electronic Filing Pilot Project, General Order 2012-01, inmates who reside in or are transferred into Louisiana Department of Corrections facilities participating in the Electronic Filing Pilot Program shall receive orders, notices and judgments by Notice of Electronic Filing ("NEF").

Instructions for Filing Complaint by Prisoners
Under the Civil Rights Act, 42 U.S.C. § 1983.

The names of **all parties** must be listed in the caption and in part III of the complaint **exactly the same.**

In order for this complaint to be filed, it must be accompanied by the filing fee of $400.00. In addition, the United States Marshal will require you to pay the cost of serving the complaint on each of the defendants.

If you are unable to pre-pay the filing fee and service costs, you may petition the court to proceed in forma pauperis. You must sign the affidavit, and obtain the signature of an authorized officer certifying the amount of money in your inmate account. If pauper status is granted, you will be required to pay an initial partial filing fee and thereafter, prison officials shall be ordered to forward monthly payments from your inmate account until the entire filing fee is paid.



You will note that you are required to give facts. THIS COMPLAINT SHOULD NOT CONTAIN LEGAL ARGUMENTS OR CITATIONS. ALSO, <u>DO NOT INCLUDE EXHIBITS</u>.

Submit the complaint and pauper affidavit to the Clerk of the United States District Court for the Middle District of Louisiana, 777 Florida Street, Suite 139, Baton Rouge, La. 70801-1712.

I.    Previous Lawsuits

A.  Have you begun other lawsuits in state or federal court dealing with the same facts involved in this action or otherwise relating to your imprisonment?   Yes ( )  No (✓)

B.  If your answer to A is yes, describe each lawsuit in the space below.  (If there is more than one lawsuit, describe the additional lawsuits on another piece of paper, using the same outline.)

1. Parties to this previous lawsuit
    Plaintiff(s): _____
    _____

    Defendant(s): _____
    _____

2. Court (if federal court, name the district; if state court, name the parish):
    _____
    _____

3. Docket number: _____

4. Name of judge to whom case was assigned: _____
    _____

5. Disposition (for example: Was the case dismissed? Was it appealed? Is it still pending?):
    _____
    _____

6. Date of filing lawsuit: _____
7. Date of disposition: _____

C.  Have you had any previously filed federal lawsuits or appeals, whether or not related to the issues raised in this complaint, dismissed by any federal court as frivolous, malicious, or for failure to state a claim for which relief can be granted?
    Yes ( )       No (✓)



If your answer is yes, list the civil action numbers and the disposition of each case. You must identify in which federal district or appellate court the action was brought.

_____

_____

II.   Place of present confinement: _East Baton Rouge Parish Prison_

A. Is there a prisoner grievance procedure in this institution?
   Yes (✓) No ( )

B. Did you present the facts relating to your complaint in the state prisoner grievance procedure?
   Yes (✓) No ( )

C. If your answer is Yes:

1. Identify the administrative grievance procedure number(s) in which the claims raised in this complaint were addressed. _20-0100 -others were ignored._ _Other grievances were filed before & after this one_

2. What steps did you take? _all steps, final steps._

_____

3. What was the result? _Was found unfounded. The conditions_ _just started (some of them) to get better late, then_ _back worster._

D. If your answer is No, explain why not: _____

III.   Parties
   (In Item A below, place your name in the first blank and place your present address in the second blank. Do the same for additional plaintiffs, if any.)

   Name of plaintiff(s) _Glenn - Dumond, 2867. Gen_ _Isaac Smith, Baton Rouge, Louisiana_ _(70 807)_

In Item B below, place the full name of the defendant in the first blank, his official position in the second blank, and his place of employment in the third blank. Use Item C for the names, positions, and places of employment of any additional defendants.



see next page

B. Defendant _____ is employed as

_____ at _____

_____

C. Additional Defendants: _____

_____

_____

_____

IV.    Statement of Claim

State here as briefly as possible the <u>facts</u> of your case.  Describe how each defendant is involved.  Include also the names of other persons involved, dates, and places.  **Do not given any legal arguments or cite any cases or statutes.**  If you intend to allege a number of related claims, number and set forth each claim in a separate paragraph. (Use as much space as you need.  Attach extra sheets if necessary.)

This is a civil Rights action
filed by Glenn Damond for
violation of 14th amendment
U.S constitution. Claimant
invokes this courts supplemental
Just Jurisdiction to involve State
law claims civil code 2315
mental Pains

## Parties

1. : Glenn-Damond is the claimant, a pretrial man.

## Defendants

2. City of Baton Rouge is a municipal corporation and is sued.

3. Department of Public Safety and Corrections, a municipal corporation and is sued.

4. Correcthealth, the Prison Medical Services, a division of the City of Baton Rouge/Parish of East Baton Rouge, a municipal corporation and is sued.

2

5. Janice Martin is a parole officer Supervisor now, but was claimant's parole officer. She is sued in her indiuidual capacity, ~~and~~ not in official capacity.

6. Dennis Grimes is the Warden of East Baton Rouge Parish Prison, he is sued in his indiuidual capacity, ~~and~~ not in official capacity.

7. Thomas Eskola is a parole officer, he is sued in his indiuidual capacity, and not official capacity.

8. Will Mitchell is a parole officer Supervisor, he is sued in his indiuidual capacity, and not official capacity.

9. Darryl Anderson is the District administor of Division of Probation and Parole, he is sued in his personal capacity, and not his official capacity.

3

10. Sid J. Gautreaux III is the Sheriff over East Baton Rouge Parish Prison, he is sued in his individual capacity, and not official capacity.

11. Cheri leaders is a captain at East Baton Rouge Parish Prison, and over the medical department, she is sued in her individual capacity, and not official capacity.

12. Edward Peterson is the Captain at East Baton Rouge Parish Prison, he is sued in his individual capacity, and not official capacity.

## Claims

13. December 29, 2019, claimant was booked into the East Baton, Rouge Parish Prison on 2 non-violent charges.

4

14. after being arrested because of warrants issued by Department of public safety and correction, Martin, and the Sheriff's office, because of their official policy.

15. Anderson and Eshola sent a letter to Gautreaux III to give him the authority to hold claimant, in his prison. Due to an official policy

16. Claimant informed the intake nurse Ms. Johnson that he has a damaged respiratory system and struggles to breathe.

17. Claimant was placed on Dorm 12 where he immediately was exposed to black mold.

5

18. In the month of January 2020, on dorm 12, claimant became physically ill twice.

19. On Dorms @ 11 & 12, illnesses started passing from one inmate to the next inmate.

20. In Feb of 2020, claimant became ill again. His body started to feel weak, in pain and very irritated, and dizzy.

21. Claimant filed a medical request form to take an HIV test to be able to get medication for his HIV.

22. Nurse Johnson called claimant out at the end of Feburary 2020 and only took his blood pressure which was good at this time.

6

23. The Nurse informed claimant that he has to wait 2 weeks to take the HIV test.

24. Two weeks came and passed.

25. Claimant filed another medical request form that was ignored, claimant requested again for meds for his HIV.

26. From March 2020 until april mid 2020, claimant started having to rinse his mouth out because of blood.

27. Claimant filed a grievance in Feb 2020 concerning his denial of medical treatment for HIV that was never answered, at any step

7

28. In that grievance claimant also complaint about cold food, being exposed to black mold and his constantly getting illnesses; & constant freezing ~~temperatures~~ temperatures.

29. From March of 2020 to June 2020, claimant filed several more medical requests asking to receive breathing treatments, HIV medication, and other meds.

30. ~~These~~ requests ~~were~~ ignored, and never answered.

31. Claimant filed another grievance concerning those matters that was never answered at no step.

32. From March of 2020 through July 2020, claimant's body started to experience changes.

8

33. Claimant begans to have uncontroable coughs, sneezing out constantly heavy loads of Mucus, for months.

34. Claimant's skin started changing colors getting spots on it.

35. His upper back looking as if it was burned.

36. A lump grew under his neck.

37. Claimant's urina started feeling as if it did not want to come out, feeling stopped up.

38. Several ulcers grew inside of his mouth, and finger nails started dying.

39. The claimants private part grew several soars different times and

the tip of it changed colors.

40. Claimant's glands became swollen.

41. All of this was because claimant was being denied medical treatment, that is treatment for his HIV.

42. This caused his body to get wroster in bad condition due to denial of medical treatment.

43. At the same time, claimant was struggling to breathe through out the day and at night.

44. Inmates several times would wahe claimant up out of his sleep because they thought he was suffocating in his sleep.

(10)

45. Constantly in pain, felt as if death was running through his body.

46. Causing claimant to lay in bed many hours, for weeks and weeks, and months.

47. Claimant continued to get sicker & sicker as he was denied medical treatment for his HIV for months.

48. Claimant continued to suffer breathing because he was denied breathing treatment for months.

49. Claimant filed another Emergency grievance about being denied medical treatment, black mold exposure, and cold food coming on dorms, and cold air with a blanket with holes in it.

(11)

50. That grievance was ignored at both steps.

51. Claimant filed 2 more medical request about taking an HIV test to get medication for his HIV.

52. And requesting for breathing treatments.

53. Ignoring the request for breathing treatments, Nurse MS Losis instructed claimant to stop filing medical requests about the same thing.

54. She said she informed her boss about claimant's HIV status & I will have to wait to be treated, that is get medication.

55.  Claimant filed 2 emergency lawsuits to this court in april 2020, sending samples of black mold, 3 samples.

56.  Those lawsuits were destroyed, and claimant was threaten by cheri leaders.

57.  Who wrote claimant up for a disciplinary report 04-20-2020, file number P-20-1775.

58.  The write up was for sending samples of black mold to the federal court.

59.  She asked where was the mold so she can bleach it.

60.  Claimant explained that it will not kill it and its still killing him.

(13)

61. Claimant was threaten to be placed into the cell block, and charges file against him.

62. July 23, 2020, unexpectedly, without having a dis plinary write up, because of a custom & policy.

63. Claimant was moved off the Christian line to Dorm Q4, per orders of Peterson.

64. Dorm Q4 is wroster in inhumane conditions than Q12 though both have some.

65. Q4 is more populated and has deadly black mold in the shower area and circulating through the air vents

(14)

66. Water puddles sitting inside of the air vents for weeks and weeks, an extreme cold temperatures

67. When it rains, rain puddles sit inside the dorm, coming from outside from the rain, for days a few feet away from claimant's bed

68. When officers are informed or see it they say, " Its just water it wont kill you."

69. Claimant's skin really started being very irritated. He has to always scratch, more than it was irritated at first.

70. Claimant skin started having rashes and white spots that are very irritated.

(15)

71. Claimant's coughing got wroster and wroster along with Blinding headaches similar to migraines and nausea.

72. Claimants breathing got wroster and wroster; Most of the time when he talks he coughs until mucus comes up.

73. Claimant's eyes off and on were red and irritated as over the weeks claimant experience lethargy and listlessness; irritated nose.

74. From July 23, 2020 until today in October 2020 as well as before & continuing

(16)

75. Claimant is (was) still subjected to black mold every day all through out the day, it covers the walls in shower & celling.

76. While still being denied medical breathing treatments by a medical staff who has knowledge of his damaged respiratory system.

77. While the black mold continues to damage it even more as well as subjecting claimant to diseases, lung problems, and other health issues.

78. Claimant became ill several more times, after coming off of sicknesses that lasted 5 days.

79. Constantly coughing up mucus, over and over through out the day.

(17)

80. The first day claimant used the restroom on Q4, there was backed up faces in and around the toilet, and as days went on it continued.

81. The 3 urines are caked up with dry urining causing a dangerous filthy odor all day, even after cleaning.

82. The urinas since July 23, 2020 until today 11-06-2020 and still will be after until they remove them from the dorm.

83. They constantly have insects flying around 2 of them all of the time r all 3 of them some time.

(18)

84. For months, for 4-7 times a day, claimant has to hold his breath and watch that insects do not fly inside his penis while using the urina.

85. From July 23, 2020 until this day of 10-05-2020, claimant was and is ~~constantly~~ constantly

86. Subjected to the deadly second hand smoke of synthetic marijuana, aka Mojo, 5-7 times a day, ~~especially~~ especially after we eat, the paper ~~sprayed~~ kind, of Mojo.

87. In a prison that do not allow any smoking. And 6-9 times from both sides of his bed from 10-15-2020 - 11-06-2020

88. Claimant has constantly had to have conflicts with inmates

(19)

who sneaks to the back of the dorm most of the time where claimant's sleeps to hide & smoke,

89. Smoke over his head while he is trying to sleep; at the same time dealing with infestation of insects by bed.

90. This is still while being denied breathing treatments.

91. Claimant tries to prevent the smoke by trying to keep a extra blanket to hang up, as well as the prevent cold freezing air.

92. But because of a prison rule, officers constantly take it down & often takes it.

20

93. From July 23, 2020 until the middle, nearing the end of 09-2020, again.

94. Claimant has been receiving cold food twice a day, Raw meat 3 weeks through and 4 different times he had hair particulers in his prepared food tray.

95. That he had to return to get another one.

96. 09-03-2020, claimant found a piece of the plastic tray inside the food; while the food portions are very small, very small.

(21)

97. From July 23, 2020 until August 2020 for 4 weeks straight on Sunday morning.

98. Claimant has had dead insects inside of his oatmeal.

99. One time, officer christopher took the trays back to try to fix it, but when he returned the new trays, they also had dead insects in them.

100. The officers gave us 2 chickens on our lunch tray because of what happened at breakfast.

101. On the foodtrays, every day twice, sometimes 3 times a day, for months.

㉒

102. The bread is soaked wet by other items on the food tray, and orange juice mixed with dangerous red juice

103. 08-13-2020, because of constant litigation coming from Q4, our food was spiked; The food cart has been roaming black ants for 3 weeks.

104. Causing 80% of the inmates to literally use the restroom with diarrhea for 10 hours straight.

105. From 09-01-2020 until 09-10-2020, while by the phone area, claimant had to deal with infestation of rain ants, insects biting him while using the prison phone.

106. In august of 2020, claimant filed 3 Emergency grievances back to back about these inhumane conditions.

(23)

102. also mentioning being denied medical treatment for my HIV and ~~breathe~~ breathing issues, and second hand smoke of mojo.

108. Before I sent each of them out, I stood infront of the camera to show as evidence I was sending them out.

109. Yet all 3 were destroyed, literally ignored, literally blocking claimant from any redress.

110. Claimant filed another emergency grievance with the Warden of the prison, Grimes.

111. This one was received in the sheriff & Warden's office at the end of august 2020.

24

112. It was sent to officer gaines the grievance officer to address it under file number 20-0100.

113. He informed claimant that he did not receive any ~~of~~ of the other 3 that came up missing.

114. This grievance detailed the history of the prison destroying my documents, ignoring my medical requests, and all of the above inhumane conditions.

115. Claimant fully exhausted his grievance process this time because they finally answered the 8th grievance.

116. Claimant filed another grievance emergency about the officers destroying the 3 file in August of 2020.

117. Claimant's request was rejected by the office Leneard Gaines who he was writing the report on, that is who the report was on.

118. Officer gaines wrote claimant a disciplinary report for aggregavated disobiedince and later amended it to just disobidence.

119. The report was for the court said abuse of grievance process.

120. Lt. Cruise and officer caulier did not find claimant guilty

because they seen no evidence of abuse, with only one in their system & one rejected.

121. after I explained to them he saying I am abusing the grievance process proves he seen & received my others before destroying them.

122. they instructed claimant not to refile that same grievance on officer gains & company and be careful, in a calm threaten way.

123. Claimant personally wrote the Warden who he knows to ask him as well as the Sheriff to place him back on dorm Q12 away from excessive inhumane conditions.

(27)

124. Claimant personally contacted the Department of Public Safety and Corrections, Martins office informing them about his medical conditions.

125. asking them twice to lift the current hold. They ignored claimant due to their custom & official Policy.

126. The States attorney Teresa Broussard contacted Eskda to ask him to lift the hold & so the State can allow claimant his freedom to avoid the inhumane conditions.

127. Eskola said he is not lifting the hold at all. He, Martin and Mitchell agreed, then did the paperwork to hold me.

128. Hamid-Ghassemi, another inmate personally wrote the Warden to

28

ask him to put claimant back on dorm Q12.

129.   98% of the inmates on Dorms Q
11 & 12 wrote & signed a petition to
get claimant back on Q12,

130.   We all were denied.

131.   From July 23, 2020 until 09-10-
2020, 2 new ulcers grew inside
claimants mouth and then white
splash covered his guns & tongue,
irritating his throat.

132.   an order came from this court to
examine claimant. Then Something
Started happening.

(29)

133. 08-06-2020, claimant started being treated for like 4 days with tylenol, V-Pack, and mucus medication.

134. That medication stopped 08-10-2020; though it was denied any treatment for over 6 months.

135. 08-06-2020, claimant also took his first one & only breathing treatment.

136. This treatment was intentionally denied for ~~8~~ 8 months while claimant has been subjected to black mold & second hand smoke, damaging even more his lungs.

(30)

137. This was the only breathing treatment
in 10 months, yet claimant ~~was~~ still
subjected to second hand smoke
now at least ~~7-9~~ times a day &
black mold All through out the
day, being ~~11 - Dec 2020~~.

138. 08-28-2020, claimant finally
started taking medication for
his HIV that he was denied
treatment since requesting it in
Feb, 2020.

139. Early ~~~~ September 2020, claimant
(who already went to hospital by
late ~~~~ august 2020).

140. was called to the infirmary to
see the doctor with the head
nurse.

(31)

141. The doctor informed claimant that he was off of medication for his HIV for a long time.

142. Claimant informed him that he has been denied it by the prison for months.

143. The doctor informed claimant that his CD-4 cell count was a dangerous low of 150. His viraload was 41,664, causing emotional pains for months.

144. The doctor proscrib more medication, anti-biodiges to prevent claimant from getting sicker & dying

145. The doctor also proscibed (after taking claimant's pressure for some days) blood pressure pills.

146. Now because of constantly being denied medical treatment for over 6 months.

147. Claimant has gotten sicker causing him to now have to take ~~blood~~ ~~medication~~ blood pressure medication and antibidios every day.

148. Yet is still being denied breathing treatment while still being subjected to second hand smoke and black mold.

~~Po.~~ ~~Oooooooo, claimant creation the~~ ~~second requests~~

149. 09-14-2020, claimant experienced a dangerous dizziness beyond any ever experienced.

(33)

150. Claimant felt as if he was going to pass out. He felt this for 9 hours.

151. He informed the nurse who said he may have been taking the wrong blood pressure pills.

152. This unfamiliar dizziness, claimant felt & experienced for several ~~days~~ days.

153. 09-23-2020, claimant went on the second hospital trip for check ups and was informed by the doctor that the prison was giving him the wrong anti-biotics.

154. Informing claimant that he was supposed to be taking a liquid anti-biotic.

(34)

155. Because the one the prison was issuing claimant conflicts with the blood pressure medication.

156. Causing claimant's potassium level to rise causing dangerous affects.

157. The doctor changed the medication.

158. Claimant informed 2 different nurses, ~~about~~ about the change of medication. Natalie White & another one.

159 They both were sassy stating they do not have or give liquid anti-biotics.

(35)

160. Claimant wrote 2 medical request about it, giving one to an officer Daak infront the camera, i.e, receiving the wrong medication, and an emergency grievance form, dated 10-27-2020

161. Both were ignored & never responded to to claimant, and a emergency grievance that never got answered, at both steps.

162. From 09-11-2020 until 10-03-2020 claimant has been receiving the wrong medication, anti-biotics,

163. Causing constant dizziness, and disruptions of regular functional activities; Potassium to rise

164. Finally, 10-03-2020 the prison stopped the wrong anti-biotics until the right liquid form comes in. So from 10-03-2020 until 10-7-2020 claimant was prone to deadly diseases and death, again,

(36)

165. 09-21-2020, the final step
of claimant's grievance was
answered & yet found unfounded. Yet
they ignored the documents filed in Paragraphs
160 & 161, at both steps.

166. Yet the Warden informed the
Dorm reps several times in their
meetings.

167. That he, they submitted work
orders to the city to come
cut the black mold out, several
work orders.

168. 09-24-2020 Warden Grimes came
on the dorm @4 and stared at
the black mold wall, yet

169. Did not pay attention to the black
mold bleeding through the ceiling
right before you enter the shower
area.

(37)

170. In over 8th months, claimant has experience serious physical body changes, serious physical injuries, emotional tortures, deterioration of body.

171. Because of being denied medical treatment, causing the physical injuries mentioned above.

172. Claimant has been living in dread of dying from his HIV status rising to AIDS and dying because of being denied medication for over 5 months.

173. Claimant has been living with emotional tortures and ~~~~ psychological tortures, for months.

174. Thinking he will get a stroke and become even more disable

175. or catch a stroke and go into
a coma because of the illness
of ~~blood~~ blood disease now.

176. and mental anguish thinking he would
get sizker if he does not take
the wrong anti-biotics, being forced
to take it.

177. Even though it conflicts with blood
pressure Pills. 10-29-2020 until 11-05-2020
anti-biotics stopped again

178. Experiencing dangerous dizziness
from 09-14-2020 until 10-03-2020
off & on, until they stopped it. 10-26-20
until 11-05-2020 claimant was receiving others HIV
medication until his came in.

179. 10-~~~~152020, claimant went to court
and was released by them ~~~~
~~~~
~~~~.

(39)

180. Yet still, now being 11-06-2020, claimant
      is still being denied medical breathing
      treatments.

181. While was being subjected to inhaling
      deadly black mold and second hand smoke
      constantly 6-9 times now from 10-15-
      2020 until 11-06-2020 a day.

181A. from both sides of his bed. 11-04-2020
      officer J. Payne worked a few hours on
      Q3 & 4 and made the statement, threats
      stating

181b. That the second hand smoke was so strong it
      felt as if he was going to pass out & if
      he comes back smelling it he will fuck over
      us (the Dorms).

181c. 11-10-2020, because of the constant,
      consistent dangerous beatings and stabbing
      of inmates by gangs of inmates, and
      inmates constantly passing out

181d. unconscience from smoking mojo, all
      of which has been going on for months

(40.)

on Q3 & 4, all of which is documented.

18e. The security decided to split the dorms up and claimant was moved to Dorm Q6.

18lf. 11-13-2020, someone who claimant was raised ~~raised~~ up with in New Orleans, Brain Williams on Dorm Q S was rushed off the dorm because he almost died smoking mojo.

<u>Cause of action</u>

182. The actions of Defendants Grimes, Gautreaux III, City of Baton Rouge, and correctheatth as stated in paragraphs 16, 21-25, 27, 29, 30-31, 41-42, 47-55, 106-109, 134-138, 141-143, 146, 148, 160, 171, 186-181, in subjecting the claimant to inhumane, unconstitutional conditions of confinement, because of an ongoing defect in their medical treatment, subjecting him to punishment as a pretrial man, violates the 14th amendment due Process.

(40A)

183. The actions of Defendants Gautreaux, leaders, Grimes, and City of Baton Rouge as stated in paragraphs 16-20, 28, 30, 32-37, 43, 44, 48, 52, 53, 55-61, 65, 69-79, 106-109, 137, 165-169, in subjecting claimant to illnesses, cancer, physical body changes because of months of exposure to black mold, while knowing his breathing problems, subjecting him to unconstitutional conditions of confinement, in violation of 14th Amendment.

184. The actions of Defendant Peterson as stated in paragraphs 62-65, 69-79, in subjecting claimant to illnesses, damaged lungs, diseases, because of exposure to black mold, subjected claimant to unconstitutional conditions of confinement, punishing a pretrial man in violation of 14th amendment.

(41)

185. The actions of defendants Gautreaux III, leaders, and Grimes as stated in paragraphs 16-20, 22, 28-37, 43, 48-50, 53, 55, 58-60, 65, 69-79, 110-115, 123, 128-130, 137, 165-170, in subjecting claimant to illnesses, cancer, body changes because of black mold, even after being aware of it, yet did nothing to prevent it, subjected the pretrial claimant to punishment in violation of 14th amendment.

186. The actions of defendants Martin, Anderson, Eskola, Mitchell, and Department of Public Safety and Corrections, as stated in paragraphs 14, 15, 17-20, 43, 44, 60, 65, 69-79, 124-127, 136, 137, 148, 179, in subjecting claimant to inhumane conditions of confinement, black mold ~~for months~~ for months because of their policy, custom and rule to restrict his release from prison in the face of unconstitutional conditions in violation of 14th amendment, punishing claimant.

(42)

187. The actions of defendants City
of Baton Rouge, Gautreaux III,
and Grimes as stated in paragraphs 28,49,
66-68, 80-84, 93-105-115, in
subjecting claimant to inhumane
conditions of confinement, even
after knowing their jail is deporable,
a punishment not related to any
government interest, in violation
of 14th amendment.

188. The actions of defendants
Anderson, Martin, Eskda, Mitchell,
and Department of Public Safety
and corrections as stated in paragraphs
14,15, 66-68, 80-84, 93-105,124-
127, 179, in subjecting claimant to
inhumane living conditions not related
to any legitimate governmental interest,
in violation of 14th amendment.

189. The actions of Department of
Public safety and Corrections as
stated in paragraphs 14,15, 66-68, 28,49,

(43)

80-84, 93-105, 124-127, 179, in
subjecting claimant to living
inhumane conditions because of
their policy and custom to hold
claimant in jail, restricted his
release over 10 months, even after
being informed by claimant & a states
attorney, acted with deliberate
indifference, this persistent &
widespread practice to restrict
claimant's release, subjected him
to punishment as a pretrial man,
in violation of 14th amendment.

190. The actions of defendants City
of Baton Rouge, as stated in paragraphs
13, 66-68, 93-105, ~~●●●~~ 165-167,
in subjecting claimant to inhumane
living conditions in a, their jail
they have been informed many times
is inhumane, having subjective
knowledge, for months subjecting
claimant to unconstitutional living
conditions in violation of 14th amendment.

44

191. The actions of defendants Correct
health, and City of Baton Rouge
as stated in paragraphs 13, 16,
20-27, 29, 30, 41, 47, 51, 53-54,
107, 111, 138, 160-161, in subjecting
claimant to unconstitutional conditions
of confinement, in intentionally denying
medical treatment, their agents, for
months, because of a widespread
practice & custom, already knowing
the defects in their medical care for
prisoners, in violation of 14th amendment.

192. The actions of defendants Correct
health and City of Baton Rouge,
as stated in paragraphs 13, 21-25,
27, 29-33, 37, 38-42, 45-47, 49-51,
53, 54, 107, 108-115, 131, 138-147, for
their agents actions, intentionally
denying medical treatment for months,
causing claimant to become more
sicker, lingering death of almost
getting AIDS, requiring more medication
to save claimant, a persistent
practice of them, after knowing his

(45)

conditions for months, failed to correct it in time, in violation of 14th Amendment due process.

193. The actions of defendants Correct health and City of Baton Rouge, their agents acting pursuant to their Policies and custom, as stated in paragraphs 149-163, 177, 178, in intentionally giving claimant the wrong medication for 3 weeks, still refusing to change it after informed, because of their custom to issue medication they already have, subjected him to punishment in violation of 14th amendment.

194. The actions of defendants Correcthealth, and City of Baton Rouge as stated in paragraphs 13, 16, 29, 30, 43, 44, 53, 72, 85-92, 107, 114, 135-137, 186-181 d in subjecting claimant to lung cancer, diseases, euthanasia and increased damaged respirator failer. from (CCOBR) while Correcthealth's agents are denying breathing treatment, had knowledge and acted with deliberate indifference

44

for months to that ~~medical~~ medical need, because of their custom, subjected claimant to punishment in violation of the 14th amendment.

195. The actions of defendants Martin, Edward, Anderson, Eskola, Gautreaux III, and Grimes as stated in paragraphs 13, 15, 16, 29, 30, 43, 44, 62, 63, 85-92, 107-113, 124-127, 136, 184-186, in subjecting claimant to cancer, diseases, euthanasia, already having breathing problems, inhumane conditions of confinement, not being apart of any prison sentence, subjected a pretrial man to punishment for months in violation of 14th amendment.

196. The actions of Defendants Martin, Anderson, Mitchell, Grimes and leaders, & Gautreaux III, in their supervisory rule, role, as stated in paragraphs 14, 15, 27-31, 33-60, 64-168, 170-179, implemented policies, rules & their customs, which caused claimant to

(47)

be subjected to inhumane conditions
of confinement for months, in violation
of 14th amendment.

197. The actions of defendants Martin,
Grimes, Gautreaux III, leaders, and
Eskola, as stated in paragraphs
13, 15, 16-179, in their omission
to curb the inhumane conditions
of confinement, because of their
custom and policy to keep the
claimant in jail, they acted with
subjective deliberate indifference,
failing to abate substantial injury,
in violation of 14th amendment.

198. the actions of Defendants
correcthealth and City of Baton
Rouge, as stated in paragraph
164, their ommission of providing
right medication, making claimant
prone to deadly diseases & death,
after knowing, acted with deliberate
indifference in the delay to abate
it, subjected him to Punishemnt, lingering
death, 14th amendment violation.

48

199. The actions of Defendant Correct-
     health as stated in paragraphs
     143, 170, 172, 173, in subjecting
     claimant to mental pains, psychical
     tortures because of the custom
     their agents embraced, denying
     claimant medical attention for
     months, causing the physical damages
     states a tort under Civ.code. 2315.


200. The actions of Department of Public
     Safety and corrections as stated in
     paragraphs 143, 170, 172, 173, in
     their agents enforcing their official
     policy to hold claimant in jail, subjected
     him to mental damages, and physical
     damages as stated in paragraphs 34-42,
     21, 23, 131, 143, 163, 144-145, 146, 147,
     states a tort under Louisiana
     law, Civil. Cod. 2315.


48 A

201. The actions of Defendants City of Baton Rouge as stated in paragraphs 143, 170, 172, 123, in their agents enforcing their official policy and custom, subjected claimant to mental damages for months as his body went through physical damages, states a tort under Civi Cod. art. 2315.

202. The actions of defendants Grimes, Gautreaux III, leaders, Martin, Eshola, and Mitchell as stated in paragraphs 143, 170, 172, 173, in subjecting claimant to emotional pains, states a claim under tort law, Civi. Code. 2315.

(48 b)

203. The actions of defendant City of
     Baton Rouge as stated in paragraphs
     14, 15, 17-19, 32-54, 62-99, 101-113,
     136-138, 131, 141-181, [81d] in subjecting
     claimant to inhumane conditions of
     confinement in their prison, punishing
     a pretrial man for over 10 months,
     constitutes deprivation of liberty
     without due process in violation
     of 14th amendment.

204. The actions of Department of
     Public Safety and Corrections as
     stated in paragraphs 14, 15, 17-19,
     32-54, 62-99, 101-113, 124-127,
     131, 136-138, 141-181, [81d] in subjecting
     claimant to deadly inhumane
     conditions of confinement for over
     10 months because of their
     official policy to hold claimant and
     their agents enforcing their custom to
     hold claimant, restrict his release,
     constitutes deprivation of liberty
     without due process in violation of
     14th amendment.

     (48 c)

205. The actions of Correcthealth
as stated in paragraphs 16, 21-
27, 29-54, 76-79, 131, 132, 134-
159, 162, & 170-178, 180, fn 181-184
them, their agents, subjecting
claimant to deadly inhumane
conditions of confinement over
10 months, constitutes punishment,
causing deprivation of liberty
without due Process of law in
violation of 14th amendment.


206. The actions of Defendants
Gautreaux III, Grimes, Martin, Eshola,
Mitchell, Peterson, anderson, and
Leachers as stated in paragraphs
13-23, 25-181, fn 181d in subjecting a
pretrial man to extreme punishment
for months & months, constitutes
punishment causing deprivation of
liberty without due process in
violation of 14th amendment

(48 d)

207. The actions of Defendants Martin, Eskola, anderson, Mitchell as stated in paragraphs 14-15, 17-23, 25-30, 32-54, 62-107, 124-127, 131, 134, 135-156, 162-170, 172-178, 179, 180-181e, in subjecting claimant to deadly inhumane conditions of confinement because of the official policy of Department of Public safety and corrections to hold claimant, restrict his release, in violation of 14th Amendment due process, causing punishment for months.

V.    Relief

State briefly exactly what you want the court to do for you.  Make no legal arguments.  Cite

no cases or statutes.  Attach no exhibits. _____  See following Pages

_____

_____


VI.   Plaintiff's Declaration

1.  I understand that I am prohibited from bringing a civil action in forma pauperis if, while I was incarcerated or detained in any facility, I have brought three or more civil actions or appeals in a court of the United States that were dismissed on the grounds that they were frivolous, malicious, or failed to state a claim upon which relief may be granted, unless I am in imminent danger of serious physical injury.

2.  I understand that even if I am allowed to proceed in forma pauperis, I am responsible for paying the entire filing fee and any costs assessed by the Court, which, after payment of the partial initial filing fee, shall be deducted from my inmate account by my custodian in installment payments as prescribed by law.

3.  I understand that if I am released or transferred, it is my responsibility to keep the Court informed of my whereabouts and failure to do so may result in this action being dismissed with prejudice.

4.  I consent to receive orders, notices and judgments by Notice of Electronic Filing.


Signed this __25__ day of __November__ , 20_20_.

_____I Glenn- Ogmond_____

_____
Signature of plaintiff

<u>Relief Continues</u>

## Punitive Damages

- That defendants Gautreaux III, leaders, Peterson, and Grimes each pay claimant separately 800,000 dollars for the disregard of his life.

- That Anderson, Martin, Eskola and Mitchell each pay claimant separately 500,000 dollars for the total disregard of human life.

## Compensatory Damages

300,000

- That Correcthealth pay claimant ~~300~~ ~~.....~~ a day from 12-29-2019 until 08-06-2020 for ignoring requests for breathing treatments even after knowing his medical conditions, yet subjected claimant to struggle to breathe while at the same time inhaling black mold and

(49)

300,000

Second hand smoke. and ~~[scribbled]~~ a day from 08-07-2020 until 10-01-2020 for subjecting a pretrial man to punishment, and euthanasia, and ~~[scribbled]~~ 300,000 a day from 10-15-2020 ~~-11-06-2020~~ ~~[scribbled out]~~ ~~[scribbled out]~~

300,000

- That Correcthealth Pay claimant ~~[scribbled]~~ ~~[scribbled]~~ a day from the first medical request in Feb of 2020 until August 28-2020 for intentionally refusing to provide correct medical treatment, only acting after a court order, causing claimant to get sicker and sicker, almost dead purple finger nails, many times feeling as if death is running through his body, swollen glands, soars constantly on penis, ulcers in the mouth over r over again, lumb under neck, skin rashes, back looking as if it was burned, red irritated eyes, mouth staying bloody for weeks, uncontroable coughing up mucus, Extreme body pains for months over r over again, causing his body to having lingering torturing almost death, CD-4 cell count dropping to 150 and viraload being 41,664 a never before low, subjecting claimant to euthanasia, causing ⑤⓪ deterioration of body,

- That Correcthealth pay claimant
  ~~360,000~~ a day from 09-11-2020
  until 10-03-2020 for intentionally
  giving claimant the wrong medication
  proscribed by the doctor, and failing
  to immediately correct it until after
  claimant submitted requests, due to their
  policy ~~to~~ a custom issue whats on their list.

- That Correcthealth pay claimant ~~~~ 15
  million dollars to cover for his medical
  bills for the rest of his natural
  life for causing him to need more
  medication.

- That CITY of Baton Rouge Pay the
  Claimant ~~360,000~~ a day from
  12-29-2019 until ~~11-06-2020~~ for
  subjecting claimant to the totality
  of inhumane deadly conditions in their
  prison, causing claimant torture and
  lingering death for months, over 11 months.

• That CITY of Baton Rouge Pay claimant 300,000 a day from 12-29-~~xxxx~~ 2019 until ~~xxxxxxx~~ 08-28-2020 for their partner correcthealth's action of denying medical treatment causing torture and lingering death and very dangerous physical changes.

• That CITY of Baton Rouge Pay claimant 15 ~~xx~~ million dollars for the failer of their partner correcthealth in causing claimant to become more sicher in their jail, causing him to need medications for life.

• That CITY of Baton Rouge Pay claimant ~~xxxxxxx~~ 300000 every ~~x~~ day~~x~~ from Feb 2020 until ~~xxxxxxx~~ 1-11- 08-2020 for knowing of the deadly situations, inhumane conditions claimant was subjected to yet did nothing to address it or correct it.


• That CITY of Baton Rouge on behalf of ... 52 ... until 11-06-2020 for inhumane conditions

• That Department of Public Safety and Corrections Pay claimant ~~500000~~ ~~500000~~ a day from 12-29-2019 until ~~11-06-2020~~ for subjecting claimant to the totality of inhumane prison conditions because of their custom & policy to restrict his release, imposing dangerous punishments subjecting him to illnesses, ~~disease~~, lung cancers, euthanasia, lingering death, needing medications for his natural life.

• That Department of Public Safety and Corrections pay claimant 300,000 every ~~day~~ from 12-29-2019 until ~~11-06-2020~~ for knowing of the dangerous inhumane conditions the claimant was facing, yet did nothing to prevent it even after offered to lift the hold, because of their custom, almost ~~cost~~ cost claimant his life.

(53)

- That Gautreaux III, Grimes, leaders, anderson, Eskola, Peterson, ~~Roange~~ Mitchell and Martin each pay claimant 1000 a day from 12-29-2019 until ~~xxxxxxx~~ 11-06-2020 for the totality of inhumane conditions, because of being in the prison that Gautreaux & Grimes, leaders and Peterson runs and for anderson, Eskola, Mitchell and Martin restricting his release.

- That Gautreaux III, Grimes, leaders, anderson, Eskola, ~~xxxxx~~ and Martin each pay claimant separately 500 dollars a day from 12-29-2019 until ~~xxxxxx~~ 11-06-2020 for knowing of his deadly inhumane conditions yet did nothing to prevent them.

- That Gautreaux III, Grimes, leaders, anderson and Martin in their supervisor role in implementing policies that caused claimant to be subjected

(54)

to inhumane prison conditions for 10 months,
each separately pay claimant 500 dollars
a day from 12-29-2019 until ~~11-4-2020~~ 11-04-2020

- That Department of Public safety
  and corrections pay on behalf of
  their agents: Martin, Eskola, anderson,
  and Mitchell, for each separately
  pay claimant 300,000 a day from
  12-29-2019 until ~~11-04-2020~~ because
  of their agents restricting claimant's
  release, because of their custom and
  widespread practices of restricting
  claimant's release, subjecting him to
  the totality of dangerous deadly
  inhumane conditions for months
  even after knowing of the danger, yet
  did nothing to stop it.

- City of Baton Rouge and Correcthealth
  each pay claimant ~~250,000~~ a day
  from 10-04-2020 until 10-7-2020
  for making prone to deadly diseases &
  lingering death. and ~~250,000~~ a day from
  10-29-2020 until 11-05-2020 for the
  same.

(55)

- That City of Baton Rouge, Correcthealth, and Department of Public Safety and Corrections each pay claimant separately 30,000 an hour for the mental pains, emotional tortures for months their agents subjected claimant to because of the enforcement of their official ~~polices~~ policies and customs, causing physical body changes for months, from Feb 28, 2020 until Aug 28, 2020, and 15 million each for the mental tortures claimant will have to endure for life.

- That defendants Grimes, Gautreaux III, leaders, Martin, Eshda, and Mitchell each pay claimant separately 24,000 a day from Feb. 28, 2020, until Aug 28, 2020, for the mental tortures, emotional pains & body injuries they subjected claimant to.

- That Grimes, leaders, Gautreaux III, Martin, Eshda, Mitchell, Peterson, and Anderson each separately pay claimant 10,000 a day for the lost of liberty, wages, lotteries, business deals, investment deals, from 12-26-2019 until ~~[scribbled]~~.

(55 A)        11-06-2020

· That defendants City of Baton Rouge and Department of Public safety and Corrections each separately pay the claimant ~~00000~~ 75000 an hour from ~~00~~ 12-26-2019 until 11-06-2020 for the extreme deadly punishments causing severe mental pains and deprivation of liberty, taking away his ability to win lotteries, powerballs, mega millions, and obtain movie deals, songwriting royalties, screen-writing royalties, investment deals, business opportunties

· That Correcthealth pay claimant ~~00~~ ~~00000~~ 1.8 million a day from $ 2-28-2020 until 11-06-2020 for the punishments he experienced that constituted deprivation of liberty and for lost wages, life, business ~~000~~ opportunities, movie deals, Publishing deals, Distribution deals, investment deals, TV show deals, writers deals and royalties

(55b)

• That City of Baton Rouge on behalf of their agents, Grimes, Gautreaux III, leaders, and Peterson, Pay claimant 300,000 a day from 12-26-2019 until 11-06-2020 for the totality of inhumane deadly conditions claimant was subjected to, pay each separately.

Verification

: Glenn-Damond, verify under the penalty of perjury under the laws for the United States of amerika, pursuant to 28 U.S.C, § 1746(1) that all stated is truth.

: Glenn-Damond

Date: 11-15-2020

56

Now claimant is on blood pressure medication and antibiotics everyday. Yet he is still being denied medical breathing treatments.

3. This Declaration is govern by Fed. R. 56 (c) and is deemed admitted unless rebutted within 30 days.

: Glenn-Damond

Date: 09-11-2020.

②



: Glenn Damond
East Baton Rouge Parish Prison
2867 Brig. General Isaac Smith Ave
Baton Rouge, Louisiana (70807)
QC

CERTIFIED MAIL

7000 1530 0003 5436 4975

E.B.R. Parish Prison
Not Censored
Inmate Mail
Not Responsible For Contents

Baton Rouge PSDC 708
THE OFFICE

Clerks Office
Middle District of Louisiana
777 Florida Street, Suite 139
Baton Rouge, LA  70801

SCREENED
OK
U.S. MARSHAL