# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

**GLENN DAMOND (#394537)**

**VERSUS**

**CITY OF BATON ROUGE, ET AL**

**CIVIL ACTION**

**NO. 20-839-JWD-RLB**

## NOTICE

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the United States District Court.

In accordance with 28 U.S.C. § 636(b)(1), you have fourteen (14) days after being served with the attached Report to file written objections to the proposed findings of fact, conclusions of law and recommendations therein. Failure to file written objections to the proposed findings, conclusions, and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions of the Magistrate Judge which have been accepted by the District Court.

ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.

Signed in Baton Rouge, Louisiana, on July 22, 2021.

_____
**RICHARD L. BOURGEOIS, JR.**
**UNITED STATES MAGISTRATE JUDGE**

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

**GLENN DAMOND (#394537)**

**VERSUS**

**CITY OF BATON ROUGE, ET AL**

CIVIL ACTION

NO. 20-839-JWD-RLB

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

*Introduction*

Pending before the Court are Motions to Dismiss filed on behalf of CorrectHealth (R. Doc. 17), Department of Public Safety and Corrections (R. Doc. 22), City of Baton Rouge (R. Doc. 23), Sid Gautreaux, Dennis Grimes, Cheri Leaders, and Edward Peterson (R. Doc. 31) and Darryl Anderson, Thomas Eskola, Janice Martin and Will Mitchell (R. Doc. 32). These Motions are opposed. *See* R. Docs. 26, 28, 36, 45, and 46.

The *pro se* plaintiff, a person formerly confined at the East Baton Rouge Parish Prison ("EBRPP"), Baton Rouge, Louisiana, filed this proceeding pursuant to 42 U.S.C. § 1983 against City of Baton Rouge, Department of Public Safety and Corrections, CorrectHealth, Sid Gautreaux, Dennis Grimes, Cheri Leaders, Janice Martin, Darryl Anderson, Thomas Eskola, Edward Peterson, and Will Mitchell complaining that his constitutional rights were violated due unconstitutional conditions of confinement and deliberate indifference to his serious medical needs. He seeks monetary relief.

*Allegations of the Complaint*

In his Complaint as amended, the plaintiff alleges the following: On December 29, 2019 the plaintiff was booked into the East Baton Rouge Parish Prison after being arrested on warrants issued by defendant Martin and hold letters authored by defendants Anderson and Eskola. Plaintiff informed Nurse Johnson, the intake nurse, that he had trouble breathing due to damage

to his respiratory system. The plaintiff was placed in Dorm 12 where he was immediately exposed to black mold. In January of 2020, the plaintiff became ill twice and other inmates in Dorms 11 and 12 also became ill. In February of 2020, the plaintiff fell ill again. He was in pain and felt weak, dizzy and irritated.

The plaintiff then filed a medical request for an HIV test and medication for HIV. The plaintiff was examined by Nurse Johnson and informed that he would have to wait two weeks to take an HIV test. After two weeks passed with no test, the plaintiff filed another medical request which was ignored. Beginning in March, the plaintiff began having to rinse blood out of his mouth. The plaintiff also began suffering from coughs, sneezing, excess mucous, skin changes and rashes, a lump in his neck, mouth ulcers, dying fingernails, swollen glands, and problems urinating due to lack of treatment for HIV. Around the same time the plaintiff was also struggling to breathe but his requests for a breathing treatment were denied or ignored.

The plaintiff's illness progressed causing him to lay in his bed for weeks to months. He filed additional medical requests but was told by a nurse to stop filing requests regarding the same issues. She stated that she had informed her boss about the plaintiff's HIV status and that he would have to wait for treatment.

After attempting to file two lawsuits regarding the presence of black mold, which were destroyed by defendant Leaders, the plaintiff was asked by defendant Leaders to state where the black mold was located so she could treat it with bleach. The plaintiff explained to defendant Leaders that bleach would not kill black mold and that the mold was killing him.

Per the orders of defendant Peterson, the plaintiff was moved to Dorm 4 where there was black mold in the shower area and circulating through the air vents. Puddles of water sat inside the air vents for weeks, and there were puddles in the dorm for days following rain. The plaintiff

began to experience more skin changes and rashes, his breathing grew worse, and he also began to cough more, and suffer from migraines, nausea, and lethargy.

In Dorm 4, the plaintiff was also subjected to secondhand smoke from synthetic marijuana, cold or otherwise adulterated food, black ants and various other insects. In August of 2020 the plaintiff filed an emergency grievance received by defendant Grimes and rejected by Leonard Gaines. The plaintiff's request to defendant Grimes to move the plaintiff back to dorm 12 was denied. The plaintiff also sought help from defendant Department of Public Safety and Corrections and defendant Eskola to have his hold removed which was denied.

On August 6, 2020 the plaintiff finally received Tylenol, a V-pack, and mucus medication. He was also given one breathing treatment. On August 28, 2020 the plaintiff was finally given HIV medication. By this time, the plaintiff's cell count was dangerously low and his viral load was high. The plaintiff was also prescribed some blood pressure medication that when mixed with antibiotics caused the plaintiff to feel dizzy. Two different nurses refused to provide the plaintiff with a different antibiotic. In October of 2020 the plaintiff was finally given the right antibiotic.

The plaintiff's grievance was denied, but defendant Grimes did visit dorm 4 to view the black mold and stated to dorm representatives that work orders had been submitted to the city to treat the black mold. In November of 2020 the smoking of synthetic marijuana had increased, and the plaintiff was moved to dorm 6.

### *Standard of Review*

In *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), the Supreme Court clarified the standard of pleading that a plaintiff must meet in order to survive a motion to dismiss pursuant to Rule 12(b)(6). Specifically, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atlantic*

*Corp. v. Twombly*, *supra*, at 555. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, *supra*, 556 U.S. at 678, *quoting Bell Atlantic Corp. v. Twombly*, *supra*. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. It follows that, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.' " *Id*. at 679. "Where a Complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.' " *Id*. at 678 (internal quotation marks omitted).

On a motion to dismiss for failure to state a claim under Rule 12(b)(6), the Court "must accept as true all of the factual allegations contained in the Complaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Further, "[a] document filed *pro se* is 'to be liberally construed' ... and 'a *pro se* Complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.' " *Id*. (citation omitted). Notwithstanding, the court need not accept "a legal conclusion couched as a factual allegation," *Papasan v. Allain*, 478 U.S. 265, 286 (1986), or "naked assertions [of unlawful conduct] devoid of further factual enhancement." *Ashcroft v. Iqbal*, *supra*, 556 U.S. at 678 (internal quotation marks omitted).

### *Parties' Arguments*

### Motion to Dismiss by CorrectHealth (R. Doc. 17)

Defendant CorrectHealth moves to dismiss all claims asserted against it as frivolous and for failure to state a claim upon which relief may be granted pursuant to 28 U.S.C. § 1915A, 42 U.S.C. § 1997e(c)(1), and Federal Rule of Civil Procedure 12(b)(6). CorrectHealth asserts that the plaintiff's medical records show that the plaintiff received extensive treatment; therefore, his

claims of deliberate indifference are unsubstantiated and clearly baseless. CorrectHealth further asserts that the plaintiff's allegations amount to nothing more than a disagreement with treatment, and that the plaintiff has failed to sufficiently allege any custom, policy or practice that resulted in a violation of his constitutional rights.

### Motion to Dismiss by Department of Public Safety and Corrections (R. Doc. 22)

Defendant Department of Public Safety and Corrections asserts that the plaintiff's claims for monetary damages are subject to dismissal pursuant to Federal Rule of Civil Procedure 12(b)(1). The Department further asserts that the plaintiff's allegations against the department should be dismissed for failure to state a claim upon which relief may be granted pursuant to Federal Rule of Civil Procedure 12(b)(6).

### Motion to Dismiss by City of Baton Rouge (R. Doc. 23)

Defendant City of Baton Rouge asserts that since the plaintiff is a prolific litigator that the Court should conduct a hearing pursuant to *Spears v. McCotter*, 766 F.2d 179 (5th Cir. 1985) to determine whether the assertions made in this litigation should be dismissed as frivolous. The City further asserts that the plaintiff's allegations regarding black mold are unsubstantiated, that the City is not responsible for any other conditions complained of, and that the plaintiff has failed to adequately assert a claim of municipal liability against the City.

### Motion to Dismiss by Sid Gautreaux, Dennis Grimes, Cheri Leaders, and Edward Peterson (R. Doc. 31)

The Sheriff defendants first assert that the plaintiff's claims against them should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(5) due to the plaintiff's failure to timely serve these defendants. The Sheriff defendants next assert that the plaintiff 's claims herein were previously adjudicated and are barred by the doctrine of res judicata. Alternatively, the Sheriff defendants asserts that the plaintiff's claims should be dismissed for failure to state a

claim upon which relief may be granted pursuant to Federal Rule of Civil Procedure 12(b)(6). These defendants also assert that they are entitled to qualified immunity.

**Motion to Dismiss by Darryl Anderson, Thomas Eskola,**

**Janice Martin and Will Mitchell (R. Doc. 32)**

Defendants Anderson, Eskola, Martin and Mitchell assert that the plaintiff's claims against them should be dismissed for failure to state a claim upon which relief may be granted pursuant to Federal Rule of Civil Procedure 12(b)(6). More specifically, these defendants assert that they plaintiff has failed to allege personal involvement on the part of these defendants. These defendants also assert that they are entitled to qualified immunity.

*Relevant Law*

**General Constitutional Standards**

A jail official's treatment of a pretrial detainee is governed by the substantive protections of the Due Process Clause of the Fourteenth Amendment whereas, upon conviction, such treatment is evaluated under the Eighth Amendment's prohibition against cruel and unusual punishment. The Due Process Clause protects the detainee's right to be free from punishment prior to an adjudication of guilt. *See Bell v. Wolfish,* 441 U.S. 520, 535–36.

The appropriate standard to apply in analyzing a constitutional challenge by a pretrial detainee depends upon whether the challenge is an attack on a condition of confinement or a complaint about one or more episodic acts or omissions. *Hare v. City of Corinth,* 74 F.3d 633, 643 (5th Cir. 1996). A conditions-of-confinement case is a constitutional attack on the "general conditions, practices, rules, or restrictions of pretrial confinement." *Id.* In such case, the harm is caused by the condition or policy itself, and this is true, for example, where inadequate medical care, *as a whole,* results in intolerable conditions of confinement. *Cf., Scott v. Moore,* 114 F.3d 51, 53 (5th Cir. 1997). In contrast to the foregoing, if a pretrial detainee is complaining of one or

more particular acts or omissions by prison officials, the claim is characterized as an "episodic act or omission" case. *Id.* An episodic case is presented when the decision of an independent actor, such as a doctor or nurse, is interposed between the detainee and the policy or practice of the local governmental entity that permitted the harm. *Hare v. City of Corinth, supra,* 74 F.3d at 643.

In an episodic act or omission case, the detainee must establish that the official had actual, subjective knowledge of a substantial risk of serious harm but responded with deliberate indifference to the known or perceived risk. *Id.* The deliberate indifference standard is notably the same standard that is applicable in the Eighth Amendment context. *Id.* at 643–44. In applying this standard, the determinative question is whether the defendant prison officials subjectively knew that the inmate plaintiff faced a substantial risk of serious harm, yet disregarded that risk by failing to take reasonable steps to abate it. *Farmer v. Brennan,* 511 U.S. 825, 837 (1994). Specifically, prison officials must be shown to have been personally aware of facts from which an inference could be drawn that a substantial risk of serious harm existed, and they also must be shown to have drawn the inference. *Id*.

## Qualified Immunity

The qualified immunity defense is a familiar one and, employing a two-step process, operates to protect public officials who are performing discretionary tasks. *Huff v. Crites*, 473 F. App'x. 398 (5th Cir. 2012). As enunciated in *Saucier v. Katz*, 533 U.S. 194 (2001), the first step in the analysis is to consider whether, taking the facts as alleged in the light most favorable to the plaintiff, the defendant's conduct violated the plaintiff's constitutional rights. *Id.* at 201. Second, the district court looks to whether the rights allegedly violated were clearly established. *Id.* This inquiry, the Court stated, is undertaken in light of the specific context of the case, not as a broad, general proposition. *Id*. The relevant, dispositive inquiry in determining whether a constitutional

right was clearly established is whether it would have been clear to a reasonable state official that his conduct was unlawful in the situation which he confronted. *Id*.

### Supervisor Liability

In order for a prison official to be found liable under § 1983, the official must have been personally and directly involved in conduct causing an alleged deprivation of an inmate's constitutional rights or there must be a causal connection between the actions of the official and the constitutional violation sought to be redressed. *Lozano v. Smith*, 718 F.2d 756, 768 (5th Cir. 1983). Any allegation that the defendant is responsible for the actions of subordinate officers or co-employees under a theory of vicarious responsibility or *respondeat superior* is alone insufficient to state a claim under § 1983. *See Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009), *citing Monell v. Department of Social Services*, 436 U.S. 658, 691 (1978). *See also Bell v. Livingston*, 356 F. App'x. 715, 716–17 (5th Cir. 2009) (recognizing that "[a] supervisor may not be held liable for a civil rights violation under any theory of *respondeat superior* or vicarious liability"). Further, in the absence of direct personal participation by a supervisory official in an alleged constitutional violation, an inmate plaintiff must allege that the deprivation of his constitutional rights occurred as a result of a subordinate's implementation of the supervisor's affirmative wrongful policies or as a result of a breach by the supervisor of an affirmative duty specially imposed by state law. *Lozano v. Smith*, *supra*, 718 F.2d at 768.

### Municipal Liability under *Monell*

A suit against a government official in his official capacity is the equivalent of filing suit against the government agency of which the official is an agent. *Burge v. Parish of St. Tammany,* 187 F.3d 452, 466 (5th Cir. 1999). Therefore, to determine whether the plaintiff has stated such a claim, the Court must conduct a municipal liability analysis under *Monell v. Dep't of Social Services of the City of New York,* 436 U.S. 658 (1978). *See Nowell v. Acadian*

*Ambulance Service,* 147 F.Supp.2d 495, 501 (W.D. La. 2001) (citing *Turner v. Houma Mun. Fire and Police Civil Service Bd.,* 229 F.3d 478, 483 fn.10 (5th Cir. 2000)).

To assert a claim of municipal liability under Section 1983, a plaintiff must adduce sufficient factual matter to satisfy three elements: (1) the existence of an official policy or custom; (2) a policymaker with final policymaking authority; and (3) a violation of constitutional rights whose "moving force" is the policy or custom. *Davis v. Tarrant County, Tex.,* 565 F.3d 214, 227 (5th Cir. 2009). Municipal liability cannot be established by a theory of *respondeat superior. Monell,* 436 U.S. at 691. Instead, the plaintiff must point to some official policy or custom that caused their constitutional harm. *Id.* The Fifth Circuit Court of Appeals has unanimously defined an official policy for Section 1983 purposes as:

> 1. A policy statement, ordinance, regulation, or decision that is officially adopted and promulgated by the municipality's lawmaking officers or by an official to whom the lawmakers have delegated policy-making authority; or
>
> 2. A persistent, widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy. Actual or constructive knowledge of such custom must be attributable to the governing body of the municipality or to an official to whom that body had delegated policy-making authority. *Bennett v. City of Slidell*, 735 F.2d 861, 862 (5th Cir.1984).

Whether an official has been delegated policymaking authority is a question of law for the judge. *Gros v. City of Grand Prairie, Tex.*, 181 F.3d 613, 617 (5th Cir. 1999). In making this determination, a court should consider state and local "positive law" as well as evidence of municipal "customs and usages." *See id.* at 616; *see also id.* at 616 n.2 (observing that the Supreme Court has rejected the principle of a "de facto" policymaker, but also determining that continuous refusal of actual policymaker to review decisions of subordinate official would, "at some point," establish the subordinate official as the policymaking authority via custom or usage).

"Actual or constructive knowledge of [a] custom must be attributable to the governing body of the municipality or to an official to whom that body has delegated policy-making authority." *Piotrowski v. City of Houston*, 237 F.3d 567, 579 (quoting *Webster v. City of Houston*, 735 F.2d 838, 842 (5th Cir. 1984) ). Elaborating on these requirements, the Fifth Circuit has stated:

> Actual knowledge may be shown by such means as discussions at council meetings or receipt of written information. Constructive knowledge may be attributed to the governing body on the ground that it would have known of the violations if it had properly exercised its responsibilities, as, for example, where the violations were so persistent and widespread that they were the subject of prolonged public discussion or of a high degree of publicity. *Hicks-Fields v. Harris Cnty., Tex.*, 860 F.3d 803, 808–09 (5th Cir. 2017) (quoting *Bennett v. City of Slidell*, 728 F.2d 762, 768 (5th Cir. 1984) ).

Finally, "[t]o succeed [in alleging 'moving force' causation], 'a plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights.'" *Valle v. City of Houston*, 613 F.3d 536, 542 (5th Cir. 2010) (quoting *Bd. of the County Comm'rs v. Brown*, 520 U.S. 397, 404 (1997) ). "That is, 'the plaintiff must demonstrate that a municipal decision reflects deliberate indifference to the risk that a violation of a particular constitutional or statutory right will follow the decision.'" *Id.* (quoting *Brown*, 520 U.S. at 411).

*Analysis*

**CorrectHealth**

The plaintiff has failed to sufficiently allege any custom, policy or practice of defendant CorrectHealth that resulted in a violation of his constitutional rights. As noted by the Court in *Faire v. City of Arlington*, 957 F.2d. 1268, 1278 (5th Cir. 1992)[1],

---

[1] See also *Robles v. Ciarletta,* 797 F. App'x 821 (5ᵗh Cir. 2019) (*"*To survive a motion to dismiss on an unconstitutional custom or practice claim, plaintiffs must point to factual allegations sufficient to allow a reasonable inference that there was a pattern of misconduct involving similar acts. A pattern requires "sufficiently numerous prior incidents as opposed to isolated instances.")

> "We have consistently required a plaintiff to plead "specific facts, not merely conclusory allegations." A § 1983 plaintiff must plead specific facts with sufficient particularity to meet all the elements of recovery. This heightened pleading requirement applies to allegations of municipal custom or policy…Allegations of an isolated incident are not sufficient to show the existence of a custom or policy. "Isolated violations are not the persistent, often repeated constant violations that constitute custom and policy." To demonstrate a municipal custom or policy under § 1983, a plaintiff must at least allege…a pattern of similar incidents…" (citations footnotes omitted).

In the instant matter the plaintiff has stated no facts in support of his assertion that defendant CorrectHealth had a persistent practice of denying medical treatment until an inmate's condition worsened. The plaintiff has not alleged a pattern of similar incidents. As such his allegations of an isolated incident are not sufficient to show the existence of a custom or policy. For the same reasons, to the extent the plaintiff seeks to hold CorrectHealth liable for the actions or inactions of its nurse employees who have not been named as defendants in this matter, the plaintiff has not pled sufficient facts to state a claim for supervisory liability.

With regards to the unnamed medical employees, the plaintiff has set forth allegations that he notified personnel of his medical status on multiple occasions and any treatment or diagnosis was ignored and/or intentionally delayed, resulting in significant complications and adverse health consequences. Plaintiff has not, however, identified any particular employee as a defendant or what specific actions a particular individual failed to take that constitutes deliberate indifference to his medical needs.

The Court also recognizes that plaintiff is proceeding pro se, and finds that he should be given an opportunity to amend to correct these deficiencies. According, it is recommended that plaintiff should be allowed 21 days to amend his Complaint. Specifically the plaintiff should name these employees as defendants, in their individual capacities, and state what alleged actions or inactions on the part of these employees led to a delay in the receipt of his HIV medications and any alleged harm resulting from the delay.

**City of Baton Rouge**

With regards to defendant City of Baton Rouge, the plaintiff has not alleged a condition at the jail that is considered a constitutional violation. The federal courts have recognized that certain institutional problems such as dampness, mold, and stale air do not amount to a constitutional violation. *See*, *e.g., White v. Gusman*, No. 14-2131, 2014 WL 6065617, at *1 (E.D. La. Nov. 12, 2014); *Harrison v. Cox*, No. 12-1813, 2013 WL 620799, at *5 (W.D. La. Jan. 16, 2013); *Clark v. Gusman*, No. 11-2673, 2012 WL 1825306, at *5 (E.D. La. Mar. 29, 2012). Even assuming that the complained of conditions existed and that the plaintiff had symptoms associated with the presence of black mold at the jail, he has not alleged that the defendant intended a risk of serious harm to his person or intentionally ignored that risk. As such, the plaintiff has not stated a constitutional violation. *See McCarty v. McGee*, No. 06cv113, 2008 WL 341643, at *3 (S.D. Miss. Feb. 5, 2008) ("Plaintiff's claim that the shower he was forced to share with other inmates is polluted and covered in mold and fungus, causing him to catch athlete's foot and ringworm, fails to rise to the level of a constitutional violation."). The mere the presence of mold in a prison setting does not render an inmate's confinement unconstitutional. *See, e.g., Eaton v. Magee*, No. 10-112, 2012 WL 2459398, at *5 (S.D. Miss. Jun. 27, 2012) ("Plaintiff's claim that the bathroom and shower area are unsanitary and contain black mold fails to rise to the level of a constitutional violation."); *Barnett v. Shaw*, No. 11-0399, 2011 WL 2200610, at *2 (N.D. Tex. May 18, 2011) (allegation of "excessive amount of black mold in the showers and sinks" was insufficient to raise a claim for constitutional violation); *Reynolds v. Newcomer*, No. 09-1077, 2010 WL 234896, at *10 (W.D. La. Jan. 19, 2010) ("the presence of black mold in living areas, eating areas, and shower areas" are "no more than a *de minimis* level of imposition with which the Constitution is not concerned.").

With regards to the plaintiff's allegations regarding the food served at the prison, the plaintiff has failed to plead a constitutional violation. The plaintiff does not contend that he lost weight or that he suffered any physical injury as a result of the purportedly small portions. *See Eason v. Thaler,* 73 F.3d 1322, 1327 (5th Cir.1996) (no constitutional violation absent showing that meals received during lockdown were nutritionally or constitutionally inadequate or improper). Moreover, the fact that food was served cold or at improper temperatures does not rise to a constitutional deprivation. *See Hamm v. DeKalb County,* 774 F.2d 1567, 1575 (11th Cir.1985) (no constitutional deprivation where jail occasionally served cold food). Additionally, "occasional incidents of tainted food or food containing foreign objects, while regrettable, do not raise a question of constitutional proportion." *Gardner v. Devenyns,* 2012 WL 706850 *3 (D. Md. Mar. 2, 2012); Hamm v. DeKalb County,* 774 F.2d at 1575 (fact that food in jail occasionally contained foreign objects did not amount to constitutional deprivation).

With regards to the plaintiff's allegations as to unsanitary bathroom conditions, to give rise to a claim of constitutional significance, the challenged condition must amount to punishment. *See Bell v. Wolfish,* 441 U.S. 520, 535 (1979). Punishment, in the constitutional sense, requires allegations of excessive or arbitrary deprivations. *Hudson v. McMillian,* 112 S. Ct. 995, 1000 (1992). In the instant matter the plaintiff has plead no such deprivations.

Furthermore, with regards to the foregoing conditions and the plaintiff's medical care, the Complaint does not cite any specific City policy. Nor does the plaintiff plead any facts that would permit the conclusion that an unidentified City custom or policy was the moving force behind the alleged constitutional violations.

### Sid Gautreaux, Dennis Grimes, Cheri Leaders, and Edward Peterson

To the extent the plaintiff alleges that defendants Gautreaux, Grimes, Leaders, or Peterson are responsible for any of the foregoing alleged unconstitutional conditions of

confinement, the plaintiff's claims fail for the reasons stated above with regards to defendant City of Baton Rouge as none of the complained of conditions amounts to a constitutional violation.

To the extent the plaintiff complains of exposure to second-hand tobacco and/or synthetic marijuana smoke, the Supreme Court has applied a two-prong test to determine whether exposure to second-hand smoke violates a prisoner's constitutional rights. First, the prisoner must show that he is being exposed to unreasonably high levels of environmental tobacco smoke. *Helling v. McKinney*, 113 S.Ct. 2475, 2482 (1993). In assessing that factor, the court must conduct an inquiry into the seriousness of the potential harm and the likelihood that the smoke will actually cause such harm. *Id*. The court also must determine whether society considers the risk to be so grave that it violates contemporary standards of decency to expose anyone unwillingly to such a risk. *Id*. Second, and most relevant to the motion at hand, the prisoner must show that prison authorities demonstrated a deliberate indifference to his plight. *Id*.

In the instant matter the plaintiff does not allege that prison officials have been deliberately indifferent. Rather, the plaintiff alleges that he wrote to defendants Gautreaux and Grimes requesting to be moved away from excessive inhumane conditions to dorm Q12 and presumably these defendants did not respond, while also alleging that the prison is an nonsmoking facility and inmates in his dorm have been warned about noncompliance by a guard. These allegations are insufficient to demonstrate deliberate indifference.

In so far as the plaintiff complains that these defendants failed to respond to his grievances or informal complaints, the plaintiff is not constitutionally entitled to an investigation into his administrative claims or informal complaints, or to a fair or favorable response thereto. *See Mahogany v. Miller*, 252 Fed. Appx. 593 (5th Cir. 2007). *See also Geiger v. Jowers*, 404 F.3d 371, 373-74 (5th Cir. 2005) (holding that an inmate "does not have a federally protected

liberty interest" in having her administrative claims resolved to his satisfaction and that a claim "arising from the alleged failure to investigate his grievances is indisputably meritless").

To the extent the plaintiff alleges that defendant Leaders interfered with his access to the courts, in order to prevail on a claim of interference with access to the courts, an inmate claimant must be able to show that has he suffered some cognizable legal prejudice or detriment as a result of the defendant's actions. *Eason v. Thaler,* 73 F.3d 1322, 1328 (5th Cir. 1996).  An inmate's right to seek access to the courts is limited to the making of non-frivolous claims involving the assertion of legitimate constitutional rights. *Johnson v. Rodriguez,* 110 F.3d 299, 311 (5th Cir. 1997). Therefore, because the right to access to the courts "rest[s] on the recognition that the right is ancillary to the underlying claim, without which a plaintiff cannot have suffered injury by being shut out of court," *Christopher v. Harbury,* 536 U.S. 403, 415 (2002), "the underlying cause of action, whether anticipated or lost, is an element that must be described in the complaint." *Id.*  In the instant matter, the plaintiff alleges that defendant Leaders destroyed his lawsuits regarding the presence of black mold.  As discussed above, the plaintiff's mold allegations fail to state a claim upon which relief may be granted; therefore, the plaintiff has failed to state a claim for denial of access to the courts.

## Department of Public Safety and Corrections

Pursuant to 42 U.S.C. § 1983, only a "person" may be sued for the violation of an inmate's constitutional rights.  The Department of Public Safety and Corrections is not a person within the meaning of § 1983.  *Washington v. Louisiana*, 425 F. App'x 330, 333 (5th Cir. 2011).  The Department is also entitled to sovereign immunity with regards to the plaintiff's § 1983 claims.  "[T]he Fifth Circuit has squarely held that the Louisiana Department of Public Safety and Corrections is an arm of the State that is entitled to Eleventh Amendment immunity."

*Beyard v. Caddo Parish Com'n*, 2007 WL 1741970, at * 2 (W.D. La. April 27, 2007) (*citing Champagne v. Jefferson Parish Sheriff's Office*, 188 F.3d 312, 314 (5th Cir. 1999)).

### Darryl Anderson, Thomas Eskola, Janice Martin and Will Mitchell

To the extent the plaintiff alleges that defendants Anderson, Eskola, Martin or Mitchell are responsible for any of the foregoing alleged unconstitutional conditions of confinement, the plaintiff's claims fail for the reasons stated above with regards to defendant City of Baton Rouge. None of the complained of conditions amounts to a constitutional violation.

### Supplemental Jurisdiction

Additionally, to the extent that the plaintiff's allegations may be interpreted as seeking to invoke the supplemental jurisdiction of this court over potential state law claims, a district court may decline the exercise of supplemental jurisdiction if a plaintiff's state law claims raise novel or complex issues of state law, if the claims substantially predominate over the claims over which the district court has original jurisdiction, if the district court has dismissed all claims over which it had original jurisdiction, or for other compelling reasons. 28 U.S.C. § 1367. In the instant case, having recommended that the plaintiff's federal claims be dismissed, the Court further recommends that the exercise of supplemental jurisdiction be declined.

### RECOMMENDATION

It is recommended that the Court decline the exercise of supplemental jurisdiction. It is further recommended that the defendants' Motions to Dismiss (R. Docs. 17, 22, 23, 31 and 32) be granted, dismissing the plaintiff's claims with prejudice, and the plaintiff's pending Motions for Summary Judgment (R. Docs. 27, 29, 30, and 37) be denied as moot. It is further recommended that the plaintiff be given 21 days to amend his Complaint on the narrow basis to name any medical employees as defendants, in their individual capacities, and state what alleged actions or inactions by these employees led to the delay in receipt of his HIV medications and

any resulting harm. Failure to amend timely should result in dismissal of this matter in its entirety for failure to state a claim.

Signed in Baton Rouge, Louisiana, on July 22, 2021.

**RICHARD L. BOURGEOIS, JR.**
**UNITED STATES MAGISTRATE JUDGE**