**UNITED STATES DISTRICT COURT**

**MIDDLE DISTRICT OF LOUISIANA**

**GLENN DAMOND (#394537)**

**VERSUS**

**CITY OF BATON ROUGE, ET AL**

**CIVIL ACTION**

**NO. 20-839-JWD-RLB**

## NOTICE

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the U. S. District Court.

In accordance with 28 U.S.C. § 636(b)(1), you have 14 days after being served with the attached report to file written objections to the proposed findings of fact, conclusions of law, and recommendations set forth therein. Failure to file written objections to the proposed findings, conclusions, and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court.

**ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT**.

Signed in Baton Rouge, Louisiana, on July 7, 2022.

                                        **RICHARD L. BOURGEOIS, JR.**
                                        **UNITED STATES MAGISTRATE JUDGE**

## UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF LOUISIANA

**GLENN DAMOND (#394537)**

**VERSUS**

**CITY OF BATON ROUGE, ET AL**

**CIVIL ACTION**

**NO. 20-839-JWD-RLB**

### MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Before the Court is the Joint Motion to Dismiss Amended Complaint filed on behalf of defendants NP Joyce Brown, LCSW Tyleatha Robertson, and Nurse Sherri LoCicero (R. Doc. 96). The Motion is opposed. *See* R. Docs. 99, 100, 105, 109, and 110.

*Pro se* plaintiff, an inmate currently confined at the Dixon Correctional Institute ("DCI"), filed this action pursuant to 42 U.S.C. § 1983 against numerous defendants, complaining that his constitutional rights were violated due to deliberate indifference to his serious medical needs.[1] The instant Motion relies upon the plaintiff's Amended Complaint (R. Doc. 76) and the plaintiff's medical records (*see* R. Doc. 96-2). The plaintiff references entries in his medical records within his Amended Complaint and relies on said records in opposition to the instant Motion. As such, the Court will convert the Motion to Dismiss into a Motion for Summary Judgment and will consider the medical records submitted by the parties, and other competent summary judgment evidence located in the record.

Pursuant to well-established legal principles, summary judgment is appropriate where there is no genuine disputed issue as to any material fact, and the moving party is entitled to

---

[1] All other defendants, aside from the moving defendants, have been previously dismissed with the exception of Debra Fields, C. Foussell, and Kataryn Scott upon whom service has not been made. *See* R. Docs. 59, 64, and 83-85. In that regard, pursuant to the requirements of Rule 4(m) of the Federal Rules of Civil Procedure, failure to serve a defendant within 90 days of commencement of an action is cause for dismissal of that defendant from the proceeding. Accordingly, defendants Fields, Foussell, and Scott should be dismissed pursuant to Rule 4(m).

judgment as a matter of law. Rule 56, Federal Rules of Civil Procedure. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986). A party moving for summary judgment must inform the Court of the basis for the motion and identify those portions of the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, that show that there is no such genuine issue of material fact. *Celotex Corp. v. Catrett, supra*, 477 U.S. at 323. If the moving party carries its burden of proof under Rule 56, the opposing party must direct the Court's attention to specific evidence in the record which demonstrates that the non-moving party can satisfy a reasonable jury that it is entitled to a verdict in its favor. *Anderson v. Liberty Lobby, Inc., supra*, 477 U.S. at 248. This burden is not satisfied by some metaphysical doubt as to alleged material facts, by unsworn and unsubstantiated assertions, by conclusory allegations, or by a mere scintilla of evidence. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). Rather, Rule 56 mandates that summary judgment be entered against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett, supra*, 477 U.S. at 323.

Summary judgment is appropriate in any case where the evidence is so weak or tenuous on essential facts that the evidence could not support a judgment in favor of the non-moving party. *Little v. Liquid Air Corp., supra*, 37 F.3d at 1075. In resolving a motion for summary judgment, the Court must review the facts and inferences in the light most favorable to the non-moving party, and the Court may not evaluate the credibility of witnesses, weigh the evidence, or resolve factual disputes. *International Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263 (5th Cir. 1991).

In his Verified Complaint as amended,[2] the plaintiff alleges the following: On December 30, 2019, the plaintiff was booked into the East Baton Rouge Parish Prison ("EBRPP"). Nurse Johnson was the intake nurse, and the plaintiff discussed his anticipated release with her. Plaintiff was not released in January as he thought he would be, and in February of 2020 he began to feel physically ill. On February 28, 2020, the plaintiff filed a sick call request and informed Nurse Johnson that he needed an HIV test so that his condition could be documented. Nurse Johnson stated that the plaintiff would be tested in two weeks. After two weeks passed, Nurse Johnson was no longer employed at EBRPP and the plaintiff filed a second medical request. Neither of these two requests were recorded in the plaintiff's medical records.

On March 18, 2020, the plaintiff filed a third medical request because he was experiencing pain and still needed to be tested for HIV. The plaintiff was examined by Nurse Scott who documented that the plaintiff had no signs of distress, and no pain. Nurse Scott told the plaintiff to return if his conditioned worsened and he would then be placed on a provider list. The plaintiff's condition continued to deteriorate due to the lack of HIV medication. Plaintiff was experiencing pain, weakness, night sweats, loss of motor control, coughing, a burning urinary sensation, the taste of blood in his mouth, swollen lymph nodes, a burnt spot on his back, ulcers in his mouth, and sores on his penis. The plaintiff filed several grievances and medical requests concerning these conditions, but all were ignored.

On June 12, 2020, the plaintiff filed another medical request begging to be treated with HIV medication. The plaintiff was examined by defendant Nurse LoCicero who ignored physical

---

[2] On August 25, 2021, the plaintiff was granted 21 days to amend his complaint on the narrow basis to name any medical employees as defendants, in their individual capacities, and state what alleged actions or inactions by these employees led to the delay in receipt of his HIV medications and any resulting harm. As such, the operative Complaint is Record Document 76, and only allegations as specified above will be considered by the Court.

symptoms that would have been obvious to a layman and failed to refer the plaintiff to a physician. Nurse LoCicero told the plaintiff to return if his condition worsened and informed him that he would have to wait to be tested for HIV. The plaintiff filed another medical request on June 17, 2020, regarding his various symptoms and again requesting to be tested for HIV. LoCicero only ordered Mucinex for three days, and no further treatment. She additionally informed the plaintiff that her boss, defendant LCSW Robertson, was aware of his HIV condition and that she said the plaintiff would have to wait to be tested. Nurse LoCicero instructed the plaintiff to stop filing repetitive medical requests, and to return if his condition worsened. She additionally stated that Public Health was not testing at that time.

For the next two months, the plaintiff continued to suffer. On August 6, 2020, defendant NP Brown was consulted and informed the plaintiff that he did not need to take a HIV test to be treated. Labs were drawn on August 28, 2020, the results of which showed that the plaintiff now had AIDS. NP Brown then referred the plaintiff to the chronic care clinic for HIV treatment. The plaintiff began taking HIV medication on the same date.

As explained by the Court in *Dyer v. Houston*, 964 F.3d 374, 380 (5th Cir. 2020), the Fourteenth Amendment guarantees pretrial detainees a right "not to have their serious medical needs met with deliberate indifference on the part of the confining officials." *Thompson v. Upshur Cty., Tex.*, 245 F.3d 447, 457 (5th Cir. 2001) (citing, *inter alia*, *Estelle v. Gamble*, 429 U.S. 97, 103, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976)). To succeed on a deliberate-indifference claim, plaintiffs must show that (1) the official was "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists," and (2) the official actually drew that inference. *Domino v. Tex. Dep't of Criminal Justice*, 239 F.3d 752, 755 (5th Cir. 2001) (quoting *Farmer v. Brennan*, 511 U.S. 825, 837, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994)). "Deliberate indifference is an extremely high standard to meet." *Id*. at 756. Supervising officials

are liable for their own deliberate indifference but are not vicariously liable for their subordinates' conduct. A supervisor is deliberately indifferent if, with subjective knowledge of the substantial risk of serious harm, he or she fails to supervise a subordinate and this failure causes a prisoner's rights to be violated. *See Petzold v. Rostollan*, 946 F.2d 242 (5th Cir. 2019).

A delay in treatment may violate the Eighth Amendment if the delay was the result of the prison official's deliberate indifference and substantial harm—including suffering—occurred during the delay. *Easter v. Powell*, 467 F.3d 459, 464–65 (5th Cir. 2006). *See also Alderson v. Concordia Par. Corr. Facility*, 848 F.3d 415, 422 (5th Cir. 2017) (applying *Easter* to a pretrial detainee).

A review of the plaintiff's medical records reveals the following: On December 29, 2019, upon intake, the plaintiff indicated that his past medical history was limited to difficulty breathing, that he was not taking any prescription or over the counter medications, and he had no complaints other than with regards to difficulty breathing. *See* R. Doc. 96-2, p. 11-12. Nurse Breland performed a physical assessment of the plaintiff on January 12, 2020. No abnormalities were noted. *See* R. Doc. 96-2, p. 13-15. On March 18, 2020, the plaintiff was evaluated by Nurse Scott with a complaint of "body is acting different and wants to be tested for HIV, STDs, and diabetes." The plaintiff was assessed and told to fill out a sick call form to be transferred to an onsite provider if his condition worsened. *See* R. Doc. 96-2, p. 51 and 168. On June 6, 2020, the plaintiff was a no show for an appointment he requested for the purpose of having HIV testing completed. *See* R. Doc. 96-2, p. 108. None of these records indicate that the plaintiff informed anyone that he had previously tested positive for HIV.

On June 12, 2020, the plaintiff was seen by defendant Nurse LoCicero for respiratory problems and a request for HIV testing. The plaintiff stated to Nurse LoCicero, "This is my third time filing this document…I need to take a HIV test to put on my medical status file." Nurse

LoCicero also noted, "I/M also states he has 'the virus' but doesn't take any meds so he wants to be tested so he can get on meds." The plaintiff was referred to the Office of Public Health for HIV testing and was informed that he would be scheduled for testing as soon as the agency resumes testing secondary to closures for COVID-19. *See* R. Doc, 96-2, p. 169. The plaintiff was seen by Nurse Snowden on June 14, 2020, for abdominal pain, and then by Nurse LoCicero on June 17, 2020, for shortness of breath. *See* R. Doc. 96-2, p. 108-110. The plaintiff stated to Nurse LoCicero "I have HIV…I been asking for 5 months now to get tested before I really get bad skin, my body is changing, glands, nails, skin, inside, I struggle for breath and night and through the day coughing." Nurse LoCicero informed the plaintiff that he was on the schedule for when testing resumes because the Office of Public Health is not doing any testing right now due to COVID-19 quarantine. *See* R. Doc. 96-2, p. 169.

On June 19, 2020, Nurse LoCicero informed the plaintiff, with regards to HIV testing, that the Office of Public Health had not returned to the EBRPP due to COVID-19. The plaintiff's appointment was rescheduled by defendant LCSW Robertson on June 30, 2020. *See* R. Doc. 96, p. 110. On July 17, 2020, the plaintiff's appointment was again rescheduled by LCSW Robertson. The plaintiff's appointment was again rescheduled on July 31, 2020. Nurse Guerin noted, "OPH not allowed in facility due to COVID-19." *See* R. Doc. 96-2, p. 110-111.

A request for a referral to a Nurse Practitioner to address the plaintiff's medical concerns was made by LPC-S Morris on August 2, 2020. *See* R. Doc. 96-2, p. 112. On August 6, 2020, defendant NP Brown prescribed a cold pack, z-pack, and Claritin. She additionally referred the plaintiff to "EIC" and to "CCC for HIV." *See* R. Doc. 96-2, p. 113. On August 7, 2020, the plaintiff was called to the medical department by H. Guerin, who noted, "Did not disclose that he was HIV positive until visit with the Provider on 08/06/2020. Inmate Damond cannot recall what he takes or the last time he took it. Agrees to go to Lallie Kemp for treatment and care for HIV.

First available appointment will be scheduled." *See* R. Doc. 96-2, p. 142. NP Brown again referred the plaintiff to the "CCC" for new onset hypertension and HIV on August 12, 2020. On August 25, 2020, NP Brown issued the following order, "Okay to send offender to Lallie Kemp on 08/26/2020 for medication and treatment of HIV." *See* R. Doc. 96-2, p. 119-120.

On August 26, 2020, Symtuza was prescribed by NP L. Robinson, a provider at Lallie Kemp. *See* R. Doc. 96-2, p. 121. The plaintiff was again seen at Lallie Kemp on September 23, 2020. Atovaquone was added on October 8, 2020. *See* R. Doc. 96-2, p. 126 and 129. The plaintiff's HIV treatment with Symtuza and Atovaquone were continued under the supervision of a doctor.

Lab work obtained at Lallie Kemp revealed a HIV Viral Load of 41,664 copies/ml and an HIV Viral Load Log on 4.6 in August of 2020. Additionally, the plaintiff's Immune Deficiency Panel was noted to be abnormal due to low CD4%, high CD8%, low CD4/CD8 Ratio, and low CD4ABS. *See* R. Doc. 96-2, p. 176 and 178. Lab work obtained at Lallie Kemp in September of 2020 revealed a HIV Viral Load of 1,481 copies/ml and a HIV Viral Load Log of 3.2. The plaintiff's Immune Deficiency Panel was again abnormal. *See* R. Doc. 96-2, p. 184 and 186. On December 16, 2020, the plaintiff was seen by NP L. Robison at Lallie Kemp who noted that the plaintiff was there for follow up and management of HIV, and that the plaintiff's viral load was improved. The plaintiff was instructed to return in about four months. "HIV disease" was noted as the plaintiff's current health issue. *See* R. Doc. 96-2, p. 188 and 190. A diagnosis of AIDS was listed on the plaintiff's lab work results from September of 2020. *See* R. Doc. 96-2, p. 186.

The plaintiff alleges that, due to deliberate indifference, treatment for HIV was delayed resulting in various medical conditions, including contracting Varicella Zoster Virus and Cytomegalovirus, and the progression of the disease to AIDS. Based on the record before the

Court,³ while he may have requested HIV testing (along with other testing), he did not specifically inform any movant defendant of his past medical history of HIV until he told defendant Nurse LoCicero that he was HIV positive on June 12, 2020, at which time he was also exhibiting symptoms of the same. On the same date, defendant Nurse LoCicero referred the plaintiff to Public Health for HIV testing and informed the plaintiff that he would be scheduled for testing as soon as Public Health resumes testing secondary to closures for COVID-19. By June 17, 2020, defendant LCSW Robertson was aware of the plaintiff's HIV status. On the same date, defendant Nurse LoCicero again informed the plaintiff that he would have to wait for Public Health to return the facility for testing. On June 19, 2020, defendant LCSW Robertson began scheduling and then rescheduling appointments for testing via Public Health. As of July 30, 2020, the Office of Public Health was still not visiting the EBRPP due to COVID-19. Defendant NP Brown became involved with the plaintiff's medical care on August 6, 2020 and referred him to the chronic care clinic on the same date. The next day, the plaintiff was informed that he would be sent to Lallie Kemp for testing and treatment on the first available appointment date. On August 25, 2020 defendant NP Brown authorized the plaintiff's transport to Lallie Kemp. The plaintiff was evaluated at Lallie Kemp on August 26, 2020, and began receiving HIV medication on the same day, or shortly thereafter.

      As such, 75 days passed between the time a defendant in this matter was informed that the plaintiff was HIV positive and the date the plaintiff received testing and treatment. Nothing in the record before the Court indicates deliberate indifference on the part of defendants Nurse LoCicero, Licensed Clinical Social Worker Robertson, or Nurse Practitioner Brown. This is especially true given that the events complained over occurred during an unprecedented global

---

3 The Court has considered the plaintiff's verified Amended Complaint, his Affidavit attached thereto, his Supplemental Complaint, and the medical records.

pandemic. Nevertheless, once notified of the plaintiff's positive HIV status each defendant attempted to schedule the plaintiff for testing as soon as possible. Due to COVID-19 an appointment was not secured until scheduled by Nurse Practitioner Brown at an outside facility.

Any allegations that these defendants had or should have had earlier knowledge of the plaintiff's HIV status are conclusory and no basis for the same can be found in the record before the Court. Compare *La Bruno v. Miami-Dade County*, Case No. 10-22554-CIV, 2011 WL 1102806 (S.D. Fla. Mar. 23, 2011) where each defendant knew that La Bruno had HIV and needed treatment, each knew he was not receiving treatment, and each were able to ensure that he received treatment but failed to do so. La Bruno notified officials and medical personnel at each facility he was transferred to that he was HIV positive, the defendants were contacted by doctors who advised that La Bruno was HIV positive, immunocompromised and needed antiretroviral medication, defendants were court ordered to provide treatment and to appear in court to testify as to why treatment had not yet been provided, and knew his condition was continuously deteriorating as evidenced by declining CD4/t-cell levels. Despite knowledge of the plaintiff's HIV status, his need for treatment, and his declining condition no defendant took any action to facilitate treatment for La Bruno. La Bruno did not receive treatment for six months by which time irreparable damage had been done to his immune system. Accordingly, the Court concluded that the plaintiff stated a claim for deliberate indifference and that the defendants were not entitled to qualified immunity.

The instant matter is more akin to *Raines v. Unknown Parties,* Case No. 2:32-cv-108, 2022 WL 1616946 (W.D. Mich. May 23, 2022) wherein the plaintiff was sexually assaulted in prison. When Raines first requested an HIV test in September of 2020, the defendant was unaware that Raines had been assaulted and was not showing symptoms. The defendant informed Raines that because of COVID-19 healthcare was not taking any other cases unless

they were life threatening. As such, that defendant was not aware of the need for immediate HIV testing. In December of 2020 another defendant was made aware of the sexual assault and asked Raines if he wanted an HIV test and told him that he would be called to healthcare within a week for testing and assessment. The next defendant involved in Raines' care did not see documentation of an assault in Raines' records and advised him to submit a "kite" or request. In January of 2021, the same defendant advised Raines that testing had been scheduled but all labs were delayed due to COVID. Raines was finally tested for HIV in February of 2021. The Court concluded that no defendant was deliberately indifferent to Raines' medical needs. Rather, once defendants were aware of the need for HIV testing, they attempted to schedule the same which was ultimately delayed due to COVID-19. The defendants in the instant matter, like the defendants in *Raines*, attempted to schedule the plaintiff for HIV testing once they became aware of the need for the same, but testing was ultimately delayed due to COVID-19 rather than deliberate indifference on the part of any of the moving defendants.

Finally, to the extent that the plaintiff's allegations may be interpreted as seeking to invoke the supplemental jurisdiction of this Court over potential state law claims, a district court is authorized to decline the exercise of supplemental jurisdiction if a plaintiff's state law claims raise novel or complex issues of state law, if the claims would substantially predominate over the claims over which the Court has original jurisdiction, if the Court has dismissed all claims over which it had original jurisdiction, or for other compelling reasons. 28 U.S.C. § 1367. In the instant case, having recommended dismissal of the plaintiff's federal claims, the Court further recommends that supplemental jurisdiction be declined in connection with the plaintiff's potential state law claims.

**RECOMMENDATION**

It is recommended that the plaintiff's claims against defendants Fields, Foussell, and Scott should be dismissed, without prejudice, pursuant to Federal Rule of Civil Procedure 4(m).

It is further recommended that the Court decline the exercise of supplemental jurisdiction in connection with any potential state law claims, the Motion for Summary Judgment (R. Doc. 96) be granted, dismissing the plaintiff's claims against defendants NP Joyce Brown, LCSW Tyleatha Robertson, and Nurse Sherri LoCicero, with prejudice, and that this action be terminated.

Signed in Baton Rouge, Louisiana, on July 7, 2022.

**RICHARD L. BOURGEOIS, JR.**
**UNITED STATES MAGISTRATE JUDGE**